
Filed
APR 09 2015
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLICATION FOR TELEPHONE INFORMATION NEEDED FOR A CRIMINAL INVESTIGATION | No. CR 15-90304 MISC HRL<br>ORDER |

    The government has submitted, under seal, an Application for an order pursuant to 18 U.S.C. §§ 3122 and 3123 (hereafter, the "Pen Statute") authorizing the installation of a pen register and trap and trace device on several cell phone numbers. In broad terms, a pen register records the dialed number of outgoing calls (or texts) along with the date, time, and length of each call. A trap and trace device captures the same information on incoming calls (or texts). The order, if signed by the court, would be served on the service provider(s) for the target cell phone numbers and would be effective for 60 days going forward. The Pen Statute requires the court to issue the order so long as the attorney for the government certifies that the information sought is relevant to an ongoing criminal investigation. The certification was made here.

    For a number of years the government has also included in Pen Statute applications directed to cell phone numbers a request for cell site data. The court understands that every cell phone is, in effect, a radio transmitter. In order for the cell phone to place and receive calls, it has to communicate by radio with an antenna (cell site tower) controlled by that phone's service provider. The communication goes to the antenna that is closest to the location of the cell phone. The service provider records the telephone numbers and the date, time, and length of call. In addition, it records

the identity of the cell site tower handling the call as well as noting which sector of the tower was involved.[1]

That latter information is commonly called cell site information, and with it someone could get a decent idea where the subject cell phone was at the time of the call (in a particular sector in that tower's coverage area). Out in open country, where towers are few, a single tower may cover a very large area. Not so in a crowded urban locale, where towers are numerous. The application at hand seeks cell site information for 60 days back from the date of the court's order (historical data), as well as for 60 days going forward (prospective, or "real time" data).

In 1994, Congress passed the Communication Assistance of Law Enforcement Act (CALEA), which amended in part the Pen Statute. As with the Pen Statute (part of the Electronic Communication Privacy Act (ECPA)), Congress in CALEA was trying to balance a citizen's privacy interest with the legitimate investigatory pursuits of the government. In 47 U.S.C. § 1002(a)(2)(B), CALEA describes the obligations of telecommunications carriers in responding to the government's requests for information about subscribers, with a significant proviso: ". . . with regard to information acquired solely pursuant to the authority for pen registers and trap and trace devices . . . , such call-identifying information shall not include any information that may disclose the physical location of the subscriber (except to the extent that the location may be determined from the telephone number) . . . ."

Despite the prohibition just quoted from CALEA, the government has routinely been asking for cell site data in Pen Statute applications, and this court, as well as most if not all Magistrate Judges in this District, have been granting those applications. This has occurred because the government has argued that, by *including* in the Pen Statute application a request for cell site information pursuant to the Stored Communications Act (SCA) (Title II of the ECPA, 18 U.S.C. § 2701 *et seq.*), it trumps CALEA's prohibition on NOT getting cell site information solely through a pen register and trap and trace device. That is, it skirts the prohibition against physical location

---

[1] As the court understands it, the tower receives and sends within range calls anywhere in a 360 degree radius. In addition to capturing tower location, the service provider divides the tower's 360 degree radius into three sectors of 120 degrees each and records the sector from which the call came in or went out.

2

information "solely" through the Pen Statute by seeking it simultaneously under the SCA. The SCA offers the government an option on how to get stored electronic information: a search warrant issued under the Federal Rules (§ 2703(a)(c)(A)), or a court order obtained on a representation of facts showing there are reasonable grounds to believe the information is relevant and material to an ongoing criminal investigation (§ 2703(a)(C)(b) and (d)). The government chooses the "court order" option.

The government's grafting of the SCA to the Pen Statute has come to be known as the "hybrid theory" for getting prospective cell site information without showing probable cause. While this court and courts elsewhere have been granting applications based on the hybrid theory, many others have rejected it.[2] There is no clear Supreme Court or Ninth Circuit authority.

On March 3, 2015, one of this court's colleagues, Senior District Judge Susan Illston, issued an order on Motions to Suppress in *United States v. Cooper*, 13-cr-00693, Dkt. No. 117. Judge Illston carefully examined the question of whether the hybrid theory supports allowing the government to gather prospective cell site information without a showing of probable cause. She likewise considered if the SCA, without a showing of probable cause, suffices for obtaining historical cell site records (for the 60 days immediately prior to the signing of an order for disclosure). Judge Illston's order triggered a desire by this court to revisit its practice of accepting the hybrid theory. The present Application is a proper vehicle for that reexamination.

With respect to prospective or real time cell site information, there is no question that it cannot be obtained relying only on the Pen Statute. CALEA makes it clear that a customer's physical location data is off-limits. That is, Congress chose to accord that particular information a higher level of protection than any of the other information being gathered by a pen register and trap and trace device (number called or received, date, time, length of call, etc.). Add the SCA to the mix and what happens? Well, the SCA applies to *stored* electronic information. That presents a logical problem because the government is asking for information that does not yet exist. It will be created during the 60 days after the order issues. The government, in effect, urges that, although the

---

[2] See a listing of cases, pro and con, compiled in *In re Application of United States for an Order*, 733 F. Supp. 2d 939 (N.D. Ill. 2009).

3

information does not yet exist, it *will* soon exist, and then it will be recorded by the service provider and become part of its records. So, once it is *stored*, it can be disclosed to the government. The court does not know what is the lag time, if any (a minute, a second?), between when the information is recorded and when the service provider discloses it to the government. Section 1002(a) of 42 U.S.C. (CALEA) enjoins the telecommunications carrier to "expeditiously" make call-identifying information available to the government ". . . before, during, or immediately after the transmission . . . ." Basically, the government would be getting the information in near "real time". In summary, the Pen Statute prohibits obtaining location information and the SCA says nothing about obtaining prospective information or information that is not stored at the time the order issues. But, put both statutes together and you get prospective location information (without probable cause)? That argument is quite a stretch.

With respect to historical cell site information, that collected for the 60 days immediately prior to the court granting an application, the government relies on the SCA. As the government sees it, this previously gathered cell site data is just a plain, garden-variety business record of the electronic communication service provider. As noted above, the SCA offers the government two paths to getting information: (1) a search warrant on probable cause, or (2) a court order on a showing that the information is relevant and material to an ongoing investigation. The government takes the position it does not need a search warrant and can get what it wants by simply certifying relevance and materiality. It is not entirely clear why Congress created two different paths. This court suggests that the two paths are a recognition that some information should be accorded a higher level of protection from disclosure than other information. That is, some information, surely if it were constitutionally protected, requires probable cause. And, cell site location information implicates a person's constitutional right to privacy. The interplay between the bounds of a person's expectation of privacy as it relates to his/her physical location and the government's ability to obtain cell phone-related information without a search warrant is not settled. Judge Illston discussed the ongoing evolution of the law in this area, as did the government in the brief it submitted to this court in support of its Application. For this court's purposes, it is sufficient that an authorization to install a tracking device requires a probable cause showing as does an application for formal cell phone

4

tracking. The government argues that historical cell site information is not the same as tracking a person's (or vehicle's) actual location. Maybe, in a given case, the cell site information would only reveal the "general" location of the device (and thus the user), but that distinction seems more a difference in degree than in kind.

This court finds Judge Illston's analysis very persuasive, and concludes, until binding authority says otherwise, that in order to get cell site information, prospective or historical, the government must obtain a search warrant under Rule 41 on a showing of probable cause. As written, the Application is denied.

**IT IS SO ORDERED.**

Dated: April 9, 2015

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5